## PERSONS v. VAN TASSAL *et al.*

Plaintiff intrusted funds to an agent, to be invested in mortgages. The agent invested the money in a mortgage in his own name, and then assigned it to plaintiff, but the assignment was not recorded. After the execution of the mortgage the agent acquired the legal title to the land, and it was thereafter sold under a judgment against him, and defendant's vendor purchased it; neither defendant nor her vendor having any notice of plaintiff's interest in the property. *Held*, in a suit to foreclose the mortgage, that pursuant to the doctrine that, where one of two innocent persons must suffer by the act of a third, he by whose negligence the loss occurred must suffer, defendant's title was not subject to plaintiff's claim.

(Opinion filed March 1, 1902.)

Appeal from circuit court, Sanborn county. HON. FRANK B. SMITH, Judge.

Suit by Edmund R. Persons against Florence Singletary, Lizzie M. Van Tassal, and others to quiet title to certain realty. From a judgement in favor of defendant Singletary, plaintiff appeals. Affirmed.

*Elliott & Stilwill,* for appellant.

*Melvin Grigsby* and *S. K. Grigsby,* for respondents.

FULLER, J. · The trial court quieted in the defendant Singletary the title to the premises described in a mortgage, the foreclosure of which was undertaken by this action, and plaintiff appeals. The facts essential to the questions of law to be determined may, in the order of time, be stated as follows: On the 30th day of January, 1889, the Van Tassals, who then owned the land, borrowed of F. T. Day $1,650, due in five years, and, to secure its payment, executed to Day the mortgage in suit, which was recorded in due form five days thereafter. By a warranty deed, which was im-

mediately recorded, the Van Tassals conveyed the premises on the 10th day of February, 1892, to the defendant, Charles C. Anderton, from whom F. T. Day obtained a conveyance of all the right, title and interest thus acquired on the 2nd day of June, 1893, although the deed was not recorded until the 31st day of December, 1897. Thirteen months after the execution and delivery of this deed, and while the mortgage in suit was of record in the name of F. T. Day, the defendant Grigsby duly filed a notice of *lis pendens,* and instituted an action against him, aided by an attachment levied on the premises described in the above-mentioned deed and the recorded mortgage; and,after the entry of judgment in such action in favor of the plaintiff and against the defendant for more than $18,000, the premises were regularly sold on the 11th day of December, 1895, at execution sale, for $1,140, to the defendant Grigsby, who on the 24th day of January, 1896, recorded his certificate of sale, which the sheriff had executed in the usual form. As found by the court, the defendant Singletary obtained her title in the following manner: "That on the 3rd day of July, 1896,, the said Melvin Grigsby, for a valuable consideration, duly assigned the said certificate of sale to the defendant Florence Singletary, which said assignment was filed and recorded in the office of the register of deeds of Sanborn county on the 7th day of January, 1897, in Book 25, on page 565. That on the 31st day of December, 1896, in pursuance of the said sheriff's sale, and the sheriff's certificate issued thereon and assigned as aforesaid, the sheriff of Sanborn county duly made, executed, and delivered to the said Florence Singletary his deed to the said land, which deed was filed and recorded in the office of the register of deeds of Sanborn county on January 7, 1897, in Book Y. of Sheriff's deeds, page 303." To recover in this action, plaintiff relies wholly upon the following findings of fact: "That

prior to the said 30th day of January, 1889, the plaintiff, Edmund R. Persons, intrusted with the said F. T. Day a large amount of money for the purpose of investment in mortgages and securities. That the money invested in this mortgage was the money of the said Edmund R. Persons. That the mortgage was intended by said F. T. Day, and treated by him, as representing $1,650 of the money so intrusted to him by said Persons; that said Day had a separate box in his office, in which were kept the papers of said Persons, including the mortgage in question. That an assignment of said mortgage, in due form, was signed and acknowledged by said Day, and placed in this box, and with the intention of transferring the said mortgage to said Persons. It remained there until Day made an assignment for the benefit of his creditors, when the assignee, on August 17, 1896, delivered the said mortgage and the notes secured thereby, and the said assignment, to the said Persons." The defendants Singletary and Grigsby never knew that the money invested in the mortgage belonged to plaintiff, and prior to the 22d day of August, 1896, when the assignment thereof was recorded, there was nothing to indicate, even constructively, that plaintiff claimed or would ever assert any rights under the mortgage here relied upon.

There being nothing to show when Day, who had been permitted to take and record the mortgage in his own name, formed the intention to treat that instrument as representing plaintiff's money, and placed the same, together with the assignment thereof, in a separate box in his office, it may well be presumed, in support of the judgment appealed from, that such intention was formed, and the assignment of the mortgage executed, some time after the premises were sold, in partial satisfaction of the Grigsby judgment, and the recorded certificate of such sale was assigned to the defendant Singletary. The fact that plaintiff allowed Day to thus handle his

money, and sat silently by until long after the five years for which the mortgage was to run had expired, and Day, the apparent owner of the fee, had become bankrupt, fully justifies the inference, in the absence of anything to the contrary, that, upon the execution of such mortgage, plaintiff concluded to treat Day as his debtor. The true test of merger is the intention of the party, deducible from the circumstances when not expressed, and the law presumes such intention to be in accordance with his pecuniary interest. Whatever the legal rights of Day might have been at the time he obtained the deed from the grantee of his mortgagor, the fact that he took no steps to collect the overdue note secured by the mortgage suggests, when considered independently of the undisclosed assignment thereof, that he considered such indebtedness extinguished by the deed, and the title to the mortgaged premises perfect in himself. Whether the trial court applied the doctrine of merger does not appear from the record, and whether, as between plaintiff and Day, the two rights existed in the latter by reason of a merger, is a question not necessary to be determined. The facts and circumstances of this case fully justify the application of the universal doctrine that, where one or two innocent persons must suffer by the act of a third, he by whose negligence it happened must sustain the loss. Had plaintiff required the mortgage to be taken in his own name, or even obtained and recorded an assignment thereof within a reasonable time, the injury incident to the seizure and sale of the property of a stranger in satisfaction of a claim against a judgment debtor might have been avoided, and property of the judgment debtor, against which no third person would attempt to assert a claim, might have been seized and sold under the Grigsby execution.

A more appropriate case for the application of the wholesome rule above mentioned cannot be well imagined, and the judgment appealed from is affirmed.